SUSAN CAPRIOTTI and BARRY § NUMBER:
CAPRIOTTI, Individually and as
Husband and Wife

            § 26th JUDICIAL DISTRICT COURT

VERSUS

BROOKSHIRE GROCERY COMPANY § WEBSTER PARISH, LOUISIANA

### PLAINTIFFS' ANSWERS TO INTERROGATORIES
### AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Objection to Discovery Asking for Plaintiff's Trial Preparation.
There Is No Obligation on Any Party in Litigation to Have to Get "Trial Ready" to
Respond to Discovery Requests

  It is true that a party cannot be forced to prepare his opponent's case nor to make investigations for his adversary. *Territory of Alaska v. The Arctic Maid*, 135 F.Supp. 164 (D.C.Alaska 1955); See also, *Moore's Federal Practice*, Vol. 4 (2nd Ed. 1950) Section 33.17.

  There is no provision in the Louisiana Code of Civil Procedure that a party must get ready for trial and obtain all expert reports, all exhibits, all medical records, all demonstrative evidence, and everything else a party intends to use or potentially use at a trial to respond to written discovery requests.  Attempting to enforce such a claim is contrary to the Louisiana Code of Civil Procedure and would be unconstitutional.

  No party is under any obligation to obtain, create, or supply information that is not already in their possession or control at the time discovery requests are answered.

  Defendants seek to place an illegal burden on a party by seeking to require a party to divulge all trial preparation in discovery, when discovery is not complete, and the party is not ready for trial.

  Louisiana Code of Civil Procedure, Article 1424, limits discovery relative to trial preparation materials.

  Documents and evidence obtained in anticipation of litigation or in preparation for trial are covered by the work-product doctrine. *Board of Com'rs of New Orleans Exhibition Hall Authority v. Missouri Pacific R. Co.*, 613 So. 2d 174 (La. Ct. App. 4th Cir. 1992); *Turner v. Winn Dixie Louisiana, Inc.*, 527 So. 2d 1070 (La. Ct. App. 1st Cir. 1988); *McHugh v. Chastant*, 503 So. 2d 791 (La. Ct. App. 3d Cir. 1987).

  The work-product doctrine applies to all documents prepared in anticipation of any



litigation, not just those prepared in anticipation of the litigation in which the privilege is invoked. *Cacamo v. Liberty Mut. Fire Ins., Co.*, 798 So. 2d 1210 (La. Ct. App. 4th Cir. 2001).

The work-product doctrine is distinct from the attorney-client privilege and is broader, encompassing any writing prepared in anticipation of litigation. *Hodges v. Southern Farm Bureau Cas. Ins. Co.*, 433 So.2d 125 (La. 1983); *Stevens v. Hartford Ins. Co. of the Midwest*, 646 So. 2d 981 (La. Ct. App. 3d Cir. 1994).

Louisiana Code of Civil Procedure, art. 1424 expressly extends protection to writings prepared by the adverse party or the adverse party's attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial from discovery.

Information gained by non-attorney "agents" and consultants who perform work for the attorney in anticipation of litigation or trial preparation is protected by the work-product rule. This is grounded in the fact that attorneys cannot and do not personally perform all the investigative work without the help of others. Requiring lawyers to perform all non-legal work while preparing for trial would be inefficient and expensive.

Statements of witnesses taken by an attorney or investigator hired to conduct an investigation of an incident are considered to have been taken "in anticipation of litigation," and thus are protected from discovery.

Notes taken during an interview with a witness are protected from discovery because they are considered to contain the attorney's mental impressions. Such notes may be used, however, to impeach the witness at trial.

The only deadlines for trial preparation and provision of that information to an opposing party are the very few deadlines contained in the Louisiana Code of Civil Procedure or in a Pretrial Order if the Court chooses to publish one. None of those deadlines are at issue here.

<u>A Party Is Under No Obligation Under the Louisiana Code of Civil Procedure<br>to Obtain Final Expert Reports to Supply in Response to Discovery<br>Before a Deadline Set Out in the Louisiana Code of Procedure<br>for the Supplying of Expert Reports or the Deadline<br>Imposed by a Court in a Pretrial Proceeding</u>

A party is under no obligation to identify an expert, retain an expert, supply

information to an expert, or get the expert's report prior to the deadline contained in the Louisiana Code of Civil Procedure or the Court's pretrial Scheduling Order. A party is under no such obligation to merely answer discovery.

A party is under no obligation other than to produce the information reasonably available to that party at the time discovery is answered, nothing else.

La. C.C.P., art. 1425, limits discovery relative to trial preparation of expert witnesses.

La. C.C.P., art. 1425(B) allows parties to seek a court order requiring other parties to provide written reports prepared and signed by any person it intends to call as an expert witness, until this is done no such obligation exist.

La. C.C.P., art. 1425 was amended in 2007 to add subsection (D), which provides that an expert's drafts of a report required by subsection (B) are not discoverable. The same rule applies to communications, including notes and electronically-stored information that would reveal the mental impressions, opinions, or trial strategy of the attorney for the party retaining the expert.

La. C.C.P., art. 1425(D)(1) regulates discovery of facts acquired by experts who are expected to testify at trial.  Discovery is not to be conducted until after reports required by La. C.C.P., art. 1425(B) have been provided.

La. C.C.P., art. 1425(D)(3) imposes a requirement that the party seeking the discovery pay the expert a reasonable fee for the time the expert spent responding to the discovery under La. C.C.P. art. 1425(D)(1).  Defendants have not done so!

A court may also require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining information from the expert with respect to discovery obtained concerning experts expected to be call at trial under La. C.C.P., art. 1425(D)(1).

The court must order the party seeking discovery to pay a fair portion of the fees and expenses with respect to discovery obtained by experts who are not expected to testify under La. C.C.P., art. 1425(D)(2).

The identity of expert witnesses must be disclosed only 90 days prior to trial, unless the court makes a contrary order. *Quillian v. Dixie Bonded Warehouse*, 105 So. 3d 71 (La.

Ct. App. 2d Cir. 2012).

Disclosure of expert witnesses offering testimony in rebuttal to the adverse party's case is not required. *Detillier v. Smith*, 638 So. 2d 445 (La. Ct. App. 5th Cir. 1994); *Bush v. Winn-Dixie Louisiana, Inc.*, 573 So. 2d 508 (La. Ct. App. 4th Cir. 1990). The same rule applies to expert witnesses offering impeachment testimony. *Bush v. Winn-Dixie Louisiana, Inc.*, 573 So. 2d 508 (La. Ct. App. 4th Cir. 1990).

<u>The Louisiana Code of Civil Procedure Limits Discovery
to Only Matters Not Privileged, Which Are Relevant to the
Subject Matter Involved in the Pending Action.
This Does Allow for the Launching of a "Fishing Expedition"</u>

Louisiana Code of Civil Procedure, Article 1422, defines the scope of discovery in Louisiana and it applies to all discovery devices, including interrogatories and requests for production.

Discovery is not allowed on any matter not calculated to lead to the discovery of admissible evidence, matters that are irrelevant, matters that are privileged, or matters that are protected by the limitations of in the discovery articles in the Louisiana Code of Civil Procedure which limit the scope of discovery.

The scope of discovery is further limited by the Louisiana Code of Evidence and the law of evidence in Louisiana which limits the admissibility of evidence at trial and therefore, acts as a limitation on the extent of discovery and the reasonableness of discovery.

In Louisiana, discovery that is not relevant to the issues of the case, vexatious, or unreasonable is not allowed.

Plaintiff, Susan Capriotti, provides the following Answer to Interrogatories and Responses to Request for Production of Documents propounded by Defendant, Brookshire Grocery Company, as follows:

**INTERROGATORY NO. 1:**

Please state your name, address, date of birth, marital status, social security number, and current employer with address.

**ANSWER TO INTERROGATORY NO. 1:**

Susan R. Capriotti, 1642 Cottage Drive, Lake Geneva, WI 53147, 5/26/1972, married, xxx-xx-0255, none.

4

**INTERROGATORY NO. 2:**

Please identify each person answering or furnishing information serving as the basis of any response to these Requests.

**ANSWER TO INTERROGATORY NO. 2:**

Plaintiffs.

**INTERROGATORY NO. 3:**

Please identify each fact witness you may or will call to testify at the trial of this matter and describe in detail the substance of their expected testimony,

**ANSWER TO INTERROGATORY NO. 3:**

Discovery in this matter is not complete and plaintiffs can not know nor anticipate in advance of actual trial what fact witnesses they will or will not produce.  Plaintiffs may produce this when defendants agree to exchange their witness list at the same time as plaintiffs, or on a date set by a scheduling order issued by the Court.

**INTERROGATORY NO. 4:**

Please identity each expert witness you may or will call to testify at the trial of this matter, identify the field or expertise in which you will seek to so qualify them, and describe in detail the substance of their expected testimony.

**ANSWER TO INTERROGATORY NO. 4:**

Discovery in this matter is not complete and plaintiffs can not know nor anticipate in advance of actual trial what expert witnesses they will or will not produce.  Plaintiffs may produce this when defendants agree to exchange their expert witness list at the same time as plaintiffs, or on a date set by a scheduling order issued by the Court.

**INTERROGATORY NO. 5:**

Please identify each exhibit you may or will seek to introduce at the trial of this matter and identify the person whom will testify as to each exhibit's authenticity.

**ANSWER TO INTERROGATORY NO. 5:**

Discovery in this matter is not complete and plaintiffs can not know nor anticipate in advance of actual trial what exhibit they will or will not produce.  Plaintiffs may produce this when defendants agree to exchange their exhibit list at the same time as plaintiffs, or

on a date set by a scheduling order issued by the Court.

**INTERROGATORY NO. 6:**

Please identify each person with knowledge of any fact concerning or related to the accident or incident, your injuries, the damages claimed, or any other matter involved in this lawsuit, whether or not you intend to call said person to testify at the trial of this matter.

**ANSWER TO INTERROGATORY NO. 6:**

Discovery in this matter is not complete and plaintiff can not know nor anticipate in advance of actual trial what witnesses will or will not be called to testify at the trial of this matter.  Plaintiffs may produce this when defendants agree to exchange their list of what witnesses will or will not be called to testify at the trial of this matter, at the same time as plaintiffs, or on a date set by a scheduling order issued by the Court.

**INTERROGATORY NO. 7:**

Itemize all medical and hospital bills incurred as a result of the injuries sustained in this accident, furnishing the name and address of the health care provider, the date of the bill and the amount of the bill. NOTE: Even if you attach medical reports and medical bills, you are asked and required to itemize same and give the information in chronological order as requested herein.

**ANSWER TO INTERROGATORY NO. 7:**

See attached medical bills in plaintiffs possession.  Additional and updated medical bills and invoices have been requested and upon receipt, this answer to discovery will be updated.

**INTERROGATORY NO. 8:**

State the name and address of every physician who has examined and/or treated you for injuries sustained in the incident and state whether or not they have rendered any medical reports relative to said treatment and examination.

**ANSWER TO INTERROGATORY NO. 8:**

Dr. Jennifer Ranz,
Springhill Medical Clinics

Beverly Lane, Physical Therapist

Springhill Medical Center

**INTERROGATORY NO. 9:**

If you ever been involved in any other legal action as a plaintiff or as a Defendant, then please state the date and place said action was filed, giving the names of said parties involved, the docket number, the attorneys involved, a description of the nature of the action, and the outcome of the action.

**ANSWER TO INTERROGATORY NO. 9:**

Plaintiff recalls possibly being involved in legal action approximately 10 - 11 years ago.  Plaintiff does not remember the details of the legal action or if legal action was taken or if a lawsuit was filed.

**INTERROGATORY NO. 10:**

State whether you have ever made a claim for personal injuries or illnesses either as damages or for worker's compensation and if so, identify each as to the date of the injury or illness, the nature of the injury or illness, the name and address of the person or firm against whom the claim was made and the disposition of the claim including the amount of money recovered.

**ANSWER TO INTERROGATORY NO. 10:**

Plaintiff filed a workers' compensation claim concerning her left shoulder in approximately 2005.  Plaintiff is unable to recall any details of the workers' compensation proceeding.

**INTERROGATORY NO. 11:**

If you claim to have lost any wages or income as a result of the incident which is the subject of this lawsuit, state the inclusive dates you were unable to work, the total amount of lost income, the name and address of your employer, the name, address, and telephone number of your immediate supervisor, a brief description of your job duties, and your daily and/or hourly rate of pay.

**ANSWER TO INTERROGATORY NO. 11:**

Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the

fact that he may never have seen fit to take advantage of that capacity.  The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.  *Folse v. Fakouri*, 371 So.2d 1120, (LA 1979)

La. Prac. Pers. Inj. §5:70.  Loss of earnings - Proving loss of future earnings - Requirements and proof:

> Loss of future earnings are speculative, the factors that should be considered in assessing such an award include age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and inflation.  *Lanclos v. Rockwell Intern. Corp.*, 470 So.2d 924 (La. Ct. App.3d Cir. 1985)

> The claimant's treating physician may testify to the time required for full recuperation, whether full recovery will ever be likely, the duration of the required treatment necessitating complete or part-time absence from the job, etc.

> The amount of damages for an item such as loss of future wages is necessarily speculative and cannot be calculated with mathematical certainty.

18 La. Civ. L. Treatise, Civil Jury Instructions §18:7 3d ed.)  Future wage loss or loss of earning capacity - Expert opinion, states:
> In determining such an award, you may consider plaintiff's physical condition before and after this incident, his work record, his earnings in prior years, the probability or unprobability that he would have earned similar amounts in the remainder of his work life, and similar factors.
> Restatement (Second) of Torts §924 (1979) Harm to the Person, states:
> One whose interests of personality have been tortiously invaded is entitled to recover damages for past or prospective:

> > a. bodily harm and emotional distress;
> > b. loss or impairment of earning capacity;
> > c. reasonable medical and other expenses;

> Comment on Clause (b):

> c.  *Loss of earning capacity or impairment to the time of trial.*  A person physically harmed by the tort of another is entitled to receive as damages the amount of earning she has been prevented from acquiring up to the time of the trial.  This amount is the difference between what he probably could have earned but for the harm and any lesser sum that he actually earned in any employment or, if he failed to avail himself of opportunities, the amount that he probably could have earned in work for which he was fitted, up to the time of trial.  This difference represents the harm to his earning capacity.  It is not essential to recovery that the plaintiff should have been employed at the time of the accident, but his opportunities for employment are relevant in determining the amount that he probably could have earned.  Likewise it is immaterial that the plaintiff would not have worked during the period of incapacity if he could have worked.  In this case, his earning capacity was hurt, whether or not he would have chosen to exercise it, and he is entitled to damages measured by the extent to which his capacity for earnings has been

reduced.  Thus a person injured during the course of a voluntary vacation is entitled to recover damages for the loss of earning s that he could have made if he had been uninjured and had chosen to work.

The damages are not reduced by the fact that the plaintiff has suffered no net financial loss as the result of the entire transaction, as when he receives insurance money or an amount equal to his lost wages from his employer or from a friend.

   *d.  Loss or impairment of earning capacity for the future.*  The extent of future harm to the earning capacity of the injured person is measured by the difference, viewed as of the time of trial, between the value of the plaintiff's services as they will be in view of the harm and as they would have been had there been no harm.  This difference is the resultant derived from reducing to present value the anticipated losses of earnings during the expected working period that the plaintiff would have had during the remainder of his prospective life, but for the defendant's act.  (On the determination of the prospective length of life, see Comment *e*.  Accordingly, the trier of fact must ascertain, as nearly as can be done in advance, the difference between the earnings that the plaintiff probably would or could have received during his life expectancy but for the hard and the earnings that he will probably be able to receive during the period of his life expectancy but for the harm and the earnings that he will probably be able to receive during the period of his life expectancy as now determined.  In this computation, there are considered the type of work that the plaintiff has done and the type of work that, in view of his physical condition, education, experience and age, he would have been doing and will likely to do in the future during the working period of his life, together with all other matters reasonably relevant.

La. Prac. Pers. Inj. §5:60 Loss of earnings, states:
Wages, commissions, bonuses, and all other earnings and fringe benefits that the claimant has lost, or probably will lose, are compensable damages elements. *LeBlanc v. Steptore*, 723 So.2d 1056 (La. Ct. App. 3d Cir. 1998).

To recover for loss of past or future wages, the plaintiff must present medical evidence that indicates that there exists a residual disability causally related to the accident.  *Kropp v. Occhipinti*, 751 So.2d 347 (La. Ct. App. 5th Cir. 2000).

La. Prac. Pers. Inj. §5:61 Loss of earnings - Proving past earnings loss, states:
A plaintiff is entitled to cover all wages, commissions, bonuses, tips, overtime pay, pension rights, vacation pay, and other benefits that were neither paid, nor will be paid, because of the absence from the job.  The claimant must prove los past earnings by a preponderance of the evidence. *Dauzat v. Canal Ins. Co.*, 692 So.2d 739 (La. Ct. App. 3d Cir. 1997).  The evidence may consist of the plaintiff's testimony, testimony of an employer, prior employment information, such as payroll records, W-2's, tax returns, pay stubs and Social Secuirty records may be admissible even if the evidence is contradictory. *Gygax v. Brugoto*, 646 So.2d 1236 (La. Ct. App. 4th Ci4. 1994).
    The amount of lost wages do not have to be precisely proven, they must only be shown with "reasonable certainty." *Harrington v. Wilson*, 8 So.3d 30 (La. Ct. App. 5th Cir. 2009).
    La. Prac. Pers. Inj. §5:66 Loss of earnings - Proving past earnings loss, states:
Even where income has increased due to market conditions but personal production has decreased, diminished capacity can be shown.

**INTERROGATORY NO. 12:**

Are you presently, or have you ever been enrolled in Medicare Part A or Part B. If yes, please provide the following;

A.     Full name, exactly as it appears on your SSN or Medicare card if available;
B.     Medicare claim numbers;
C.     Date of enrollment;
D.     Date of birth; and
E.     Social Security Number.

**ANSWER TO INTERROGATORY NO. 12:**

Yes.

**INTERROGATORY NO. 13:**

Have you applied for or are you presently receiving Social Security disability benefits? If so, state the date of the application or the date you began receiving Social Security disability benefits.

**ANSWER TO INTERROGATORY NO. 13:**

Plaintiff received temporary social security benefits from 2016 to 2017.

**INTERROGATORY NO. 14:**

Do you presently or have you ever received Medicaid benefits? If so, state the date of eligibility.

**ANSWER TO INTERROGATORY NO. 14:**

Yes.  Eligibility dates off and on – dates unknown.

**INTERROGATORY NO. 15:**

Have you been diagnosed with Lou Gehrig's Disease (ALS) or end-stage renal disease?

**ANSWER TO INTERROGATORY NO. 15:**

No.

**INTERROGATORY NO. 16:**

With respect to injuries sustained, state what injuries you sustained in the accident upon which this suit is based, if you have fully recovered from any of the said injuries, the approximate date of recovery from each particular injury and if you have not fully recovered from your injuries, state in what respect you are still affected by them.

**ANSWER TO INTERROGATORY NO. 16:**

Not fully recovered.  Right knee, left writs, and lower back re-injured.  righ lower back.  Pulled scar tissue from prior hernia surgery

**INTERROGATORY NO. 17:**

Please state whether you have sustained any injuries or suffered any illnesses or diseases in the last five (5) years for which you have sought medical attention other than the alleged injuries you suffered in this incident; if so, please state the date of the injury or illness or disease, how it was sustained or contracted, the names and addresses of all doctors, physicians or hospitals where you were treated with the dates of confinement.

**ANSWER TO INTERROGATORY NO. 17:**

N/A.

**INTERROGATORY NO. 18:**

If you were ever examined or treated for any injuries, sicknesses, diseases or abnormalities prior to the incident alleged in this action involving any part or function of the body claimed in this suit to have been injured, please state where and by whom.

**ANSWER TO INTERROGATORY NO. 18:**

Left ankle - treated through Aurora Lakeland Health Care, Wisconsin.

**INTERROGATORY NO. 19:**

Please identify your primary care physician.

**ANSWER TO INTERROGATORY NO. 19:**

Dr. Jennifer Ranze, Springhill Medical Clinics.

**INTERROGATORY NO. 20:**

If you have ever been involved in any motor vehicle accidents and/or slip and fall incidents either before or since this incident, give the full details, including date, location, adverse parties, and injuries received.

**ANSWER TO INTERROGATORY NO. 20:**

None.

**INTERROGATORY NO. 21:**

State whether you or any representatives on your behalf have obtained any

photographs, motion pictures, videos, blueprints, diagrams or drawings of the accident scene or surrounding area, the items/equipment/area involved and/or the manner of the occurrence of the incident and/or of Defendants, giving the number of photographs, drawings, etc., date and time of day they were taken or prepared, name and address of the person who took or prepared them, what each purports to show and the name and address of the person who has possession and custody of the said photographs, drawings, etc. at the present time.

**ANSWER TO INTERROGATORY NO. 21:**

Plaintiff has none other than what has been produced by Defendant, Brookshires.

**INTERROGATORY NO. 22:**

If any tests, inspections or measurements, have been made or taken with respect to the scene of the incident or any object involved in the accident, please state the subject of the test, inspection and/or measurement, name and address of person who conducted it, the date it was conducted, and the name and address of the person having custody of any written report concerning each test, inspection, or measurement.

**ANSWER TO INTERROGATORY NO. 22:**

None.

**INTERROGATORY NO. 23:**

If you or your representative have either made or obtained any reports or statements, written or oral, in connection with the subject accident, please give the name, telephone number, and address of the person statementized; name, address, and telephone number of the person who took the statement or report; the date of the report, and a description of the contents of the statement or report.

**ANSWER TO INTERROGATORY NO. 23:**

This inquiry is directed to the existence and content of statements made by potential witnesses and parties.  Communications passing between a party and his agents made in connection with the investigation of an incident to which a claim has arisen are exempt from discovery.

Defendant's inquiry is directed to the existence and content of statements made by

potential witnesses and parties.  La. C.C.P. arts. 1424 and 1425, exempts from discovery communications passing between a party and an agent upon which the suit is based, in connection with investigation of the suit, or in anticipation of the prosecution of the claims made a part of the pending litigation.

Attorneys are entitled to take statements of witnesses as part of work product. *Yoes v. Shell Oil Co.*, 657 So.2d 241 (La. App. 5 Cir. 1995).

**INTERROGATORY NO. 24:**

Do you contend that the value of your claim, inclusive of all general and special damages, exceeds $50,000.00?

**ANSWER TO INTERROGATORY NO. 24:**

Yes.

**INTERROGATORY NO. 25:**

Do you contend that the value of your claim, inclusive of all general and special damages, exceeds $75,000.00?

**ANSWER TO INTERROGATORY NO. 25:**

Yes.

**INTERROGATORY NO. 26:**

With regard to all damages claimed by each party, in each capacity, please list a complete itemization of all categories and amounts of special damages claimed, a complete itemization of all categories and amounts of general damages and the total of all special and general damages claimed.

**ANSWER TO INTERROGATORY NO. 26:**

Upon the plaintiff having received all bills and obtaining an economic report and/or life care plan, plaintiff will supplement this response.

**INTERROGATORY NO.27:**

Give the name and address, and describe the type of work or previous employers you have had for the last five (5) years in chronological order, giving the inclusive date of employment.

**ANSWER TO INTERROGATORY NO. 27:**

Plaintiff has been self-employed for over 5 years as a wedding planner/baker.

**INTERROGATORY NO. 28:**

Please identify any and all social media sites for which you are registered, signed-up, or otherwise enrolled, including but not limited to Facebook, Twitter, and Instagram.

**ANSWER TO INTERROGATORY NO. 28:**

This interrogatory is objected to as requesting information not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 29:**

For each social media site identified in your answer to the above Interrogatory, please state your sign-on name, username, handle, or other unique identifying moniker.

**ANSWER TO INTERROGATORY NO. 29:**

See answer to interrogatory no. 28.

A request for a party's Facebook account information is over broad and not reasonably calculated to lead to the discovery of admissible evidence under La. C.C.P. Art. 1422.

The discovery request violates plaintiff's right to be protected from "annoyance, embarrassment, oppression, or undue burden or expense" under LA. C.C.P. Art. 1426.

The request violates plaintiff's constitutionally protected privacy interests. See U.S. Const. Amend. IV; La. Const. Art. I, Section 5, or *Orfanello vs. Laurente*, 626 So.2d 417, 418-419 (La. App. 4th Cir. 1993) ("Both the U.S. Constitution and La. Constitution guarantee every citizen their right to privacy. The LA Constitution does not duplicate the Fourth Amendment-it extends protection "to all invasions of privacy; a general concept broader than the unreasonable searches and seizures prescribed by the federal bill of rights...")

The request violates the Stored Communication Act of 1986 ("SCA") and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. Sect. 2701, et seq. See *Crispin vs. Christian Audigier, Inc.*, 717 F. Supp. 965 (C.D. Cal. 2010) (quashing plaintiff's subpoenas to Facebook and Myspace for "web-mail and private messaging ...to the extent

they seek private messaging because web-mail and private messaging ... are inherently

private such that stored messages not readily accessible to the general public and because

the request violated The Stored Communication Act 2 1986 ("SCA") and The Electronic

Communications Privacy Act ("ECDA"), 18 U.S.C. Sect. 2701, et seq."

> (a)   the request is not reasonably calculated to lead to the
>        discovery of admissible evidence, under La. Code Civ.
>        Proc. 1422 (i.e. because over broad) and/or
>
> (b)   a protective order is required to protect plaintiff from
>        "annoyance, embarrassment, oppression, or undue
>        burden or expense" under La. Code Civ. Proc. 1426
>        and/or
>
> (c)   the request violates Plaintiff's constitutionally protected
>        privacy interests (particularly as to private emails to
>        Facebook/MySpace inbox). See Orfanello v. Laurente,
>        626 So.2d 417, 418-19 (La. App. 4 Cir. 1993) ("Both the
>        United   States   Constitution   and   the   Louisiana
>        Constitution guarantee every citizen the right of privacy.
>
> (d)   The account holds Third Party Information which
>        defendants are certainly not entitled to obtain.  The
>        request is a violation of the rights of unrelated Third
>        Parties.

Fourth amendment--it extends protection to all 'invasions of privacy', a general

concept broader than the unreasonable search and seizures proscribed by the federal bill

of rights....".

The court denied defendants' motion to  compel plaintiff in a sexual harassment

action to produce a consent letter, authorizing defendant to access private email

communications on plaintiff's two myspace.com internet accounts. The court stated that

defendants were engaged in a "fishing expedition."  The court stated: "anything a person

says or does might in some theoretical sense be reflective of her emotional state, but that

is hardly justification for requiring production of every thought she may have reduced to

writing or, indeed, the depositions of everyone she may have talked to." See *Mackelprang*

*v. Fidelity Nat. Title Agency of Nevada, Inc.*, No. 2:06-CV-00788, 2007 WL 119149 (D.

Nev. Jan. 9, 2007) (Foley, M.J.)

The request is over broad. The "account almost certainly contains lots of information

that is irrelevant to the suit (regardless of what the suit is about).  Ergo, the request for the

account is not reasonably calculated to lead to the discovery of admissible evidence, and

thus doesn't comply with La. C.C.P. art. 1422.

An account contains a litany of personal information and correspondence, and can contain any and all of the following: address, phone number(s), email address(es), interests, likes and dislikes, relationship status, political opinions, religious affiliations, photographs, and private messages with other users. Accordingly, the vast majority, if not the entirety, of the Plaintiffs' social media accounts would be completely irrelevant to this proceeding, and there is no ground for allowing the Defendants unlimited access to same.

This request is an "invasion of privacy". *Orfanello v. Laurente*, 626 So. 2d 417 (La. App. 4th Cir. 1993). The *Orfanello* court notes that Louisiana's Constitution contains an express right to privacy that is even broader than Federal protection. The opinion notes that certain personal information is generally off-limits during discovery, and that courts should make sure parties maintain a reasonable degree of personal privacy during discovery.

Production is not required until the Defendants make a threshold showing of relevancy of the social media account.

In *McCann v. Harleysville Ins. Co. of N.Y.*, 78 A.D. 3d 1524 (N.Y. App. Div. 2010), [Defendants] failed to establish a factual predicate with respect to the relevancy of the evidence. Indeed, defendant essentially sought permission to conduct 'a fishing expedition' into plaintiff's Facebook account based on the mere hope of finding relevant evidence.

**The U.S. District Court for the Central District of California ruled May 26, 2010 that, under the Stored Communications Act of 1986, postings to a user's Facebook "wall" are considered private so long as the user has his privacy settings set such that only "friends" can see the wall postings. Accordingly, such private communications are not subject to discovery in a civil proceeding. *Crispin v. Christian Audigier, Inc.*, 2010 U.S. Dist. Lexis 52832 (C.D. Calif. May 26, 2010). The Court held that it makes no difference whether the Facebook user at issue has thousands of "friends," rendering the user's network potentially very large.**

The Court in *Tompkins v. Detroit Metropolitan Airport, et al.*, 278 F.R.D. 387 (E.D.

16

Mich. Jan. 18, 2012), stated:

> In *McCann v. Harleysville Ins. Co. of New York*, 78 A.D.3d
> 1524. 910 N.Y.S.2d 614 (N.Y.App.Div.2010), cited by Plaintiff,
> the court upheld the denial of a motion to compel Facebook
> information not on grounds of privacy or privilege, but because
> the defendant "failed to establish a factual predicate with
> respect to the relevancy of the evidence," finding that
> "defendant essentially sought permission to conduct 'a fishing
> expedition' into plaintiffs Facebook account based on the mere
> hope of finding relevant evidence." *Id.* at 1525,910 N.Y.S.2d
> 614.

***

> ... the Defendant does not have a generalized right to rummage
> at will through information that Plaintiff has limited from
> public view. Rather, consistent with Rule 26(b) and with the
> cases cited by both Plaintiff and Defendant, there must be a
> threshold showing that the requested information is reasonably
> calculated to lead to the discovery of admissible evidence.
> Otherwise, the Defendant would be allowed to engage in the
> proverbial fishing expedition, in the hope that there *might* be
> something of relevance in Plaintiffs Facebook account.

***

> Defendant has not made a sufficient predicate showing that the
> material it seeks is reasonably calculated to lead to the
> discovery of admissible evidence. *McCann, supra*, 78 A.D.3d
> at 1525, 910 N.Y.S.2d 614 ("Although defendant specified the
> type of evidence sought [access to plaintiffs Facebook account],
> it failed to establish a factual predicate with respect to the
> relevancy of the evidence."). Moreover, the request for the
> entire account, which may well contain voluminous personal
> material having nothing to do with this case, is overly broad.
> "District courts have discretion to limit the scope of discovery
> where the information sought is overly broad or would prove
> unduly burdensome to produce." *Surles ex rel. Johnson v.
> Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir.2007)
> (citing Fed.R.Civ.P. 26(b)(2)); *accord Marshall v.
> Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir.1978)
> (Rule 26 "does not, however, permit a plaintiff to 'go fishing'
> and a trial court retains discretion to determine that a discovery
> request is too broad and oppressive.").

## INTERROGATORY NO. 30:

Please identify all automobile insurers providing automobile liability insurance to

you effective on the date of the accident at issue in this litigation.

## ANSWER TO INTERROGATORY NO. 30:

This interrogatory is objected to as requesting information not relevant, nor

reasonably calculated to lead to the discovery of admissible evidence. Automobile liability

17

insurance has nothing to do with Plaintiff's incident at Brookshires.

**INTERROGATORY NO. 31:**

Please state whether or not you are provided coverage by any private or public health insurance program. If so, please identify the program provider, group number, member number, and any other identifying information.

**ANSWER TO INTERROGATORY NO. 31:**

None.

**INTERROGATORY NO. 32:**

Please state whether any medical treatment you have received as a result of this accident was paid for by any health insurance program identified in the preceding interrogatory.

**ANSWER TO INTERROGATORY NO. 32:**

Insurance through husband's employer, CSP, and Medicaid of Louisiana.

**REQUEST FOR PRODUCTION NO. 1:**

Please produce any and all documents referenced in your responses to these Requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

The defendant seeks to discover the documents in the possession of plaintiff and plaintiff's counsel.  The only purpose for such a request can either be: (a) to discover the attorneys' mental impressions or trial strategy, which are protected by the Work Product Immunity, and/or (b) to evade the production of other defendants documents containing evidence without fear of detection.  Such purposes run contrary to the underlying aims and goals of the discovery process, and are not reasonably calculated to lead to the *discovery* of admissible evidence by the defendants. La. C.C.P. arts. 1422 and 1424.

See documents attached.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce any and all documents upon which you relied or to which you referred in preparing your responses to these Requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

None.

**REQUEST FOR PRODUCTION NO.3:**

Please produce any and all documents upon which you relied or to which you referred in preparing your Petition.:

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

None.

**REQUEST FOR PRODUCTION NO.4:**

Please produce any and all documents upon which any testifying expert relied or to which any testifying expert referred in preparing his report or formulating his opinions, conclusions, or other findings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

None.

**REQUEST FOR PRODUCTION NO.5:**

Please produce any and all exhibits which you may or will seek to introduce as evidence at the trial of this matter,

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

This request calls for the plaintiff to produce his impeachment, cross-examination and rebuttal exhibits and evidence which is not in compliance with law.

Discovery in this matter is not complete and plaintiff can not know nor anticipate in advance of trial what exhibits he will or will not produce, attempt to introduce or have created.

**REQUEST FOR PRODUCTION NO.6:**

Produce legible copies of all medical bills and medical reports for treatment referred in connection with the injuries that you contend you received in this accident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

See attached.

Additional medical information has been requested and will be provided immediately upon receipt.

**REQUEST FOR PRODUCTION NO.7:**

     If you are claiming a loss for past or future wages, please produce legible copies of your Federal Income Tax Returns, W-2's, and any other earning statement records for the past five calendar years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

     Attached is the 2015 tax return of Barry and Susan Capriotti.

**REQUEST FOR PRODUCTION NO. 8:**

     Please produce copies of all repair estimates, invoices, and other documentation to prove your claim for property damage.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

     None.

**REQUEST FOR PRODUCTION NO.9:**

     Please produce any and all notes, logs, memoranda, or diary maintained in connection with any of your activities, injuries, and/or complaints that concern or are in any way related to the claims asserted in your petition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

     None.

**REQUEST FOR PRODUCTION NO. 10:**

     Please produce any statements in any form obtained from any other person or entity regarding any facts pertaining to the occurrence alleged in your petition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

     See answer to interrogatory no. 23.

**REQUEST FOR PRODUCTION NO. 11:**

     Please produce any photographs, motion pictures, videos, slides and/or still pictures taken as a result of or in connection with the occurrence alleged in your petition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

     None.

**REQUEST FOR PRODUCTION NO. 12:**

     Please execute the attached medical authorization and return it whereby the

undersigned counsel may request any and all medical records concerning consultation, treatment, or otherwise with any health care provider of any type,

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

See attached.

**REQUEST FOR PRODUCTION NO. 13:**

Please executed the attached employment records authorization and return it whereby the undersigned counsel may request any and all records concerning employment and wages.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

See attached.

**REQUEST FOR PRODUCTION NO. 14:**

Please provide color copies of all photographs which include you, and related comments, posted to any and all of your social media accounts from the date range of two weeks prior to the incident at issue in this litigation to current.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

No.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce a complete copy of your archived Facebook data in native file format. This information may be obtained by logging into your Facebook account from a computer and performing the following steps:

1.  Click on the "gear" icon at the top right of any Facebook page and selecting "Account Settings"
2.  Click "General" in the left-hand column.
3.  Click the link "Download a copy of your Facebook data",
4.  Click the green button "Start My Archive".

Once Facebook compiles your archived data it will be emailed to you. Please produce an electronic copy of this file.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

No.

**REQUEST NOR PRODUCTION NO. 16:**

Please produce a copy of the front and back of any and all insurance cards that may

provide health insurance coverage to your benefit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiff is not in possession of any health insurance cards.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce a copy of the front and back of any and all insurance cards that may

provide health insurance coverage to your benefit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiff is not in possession of any health insurance cards.

Respectfully submitted,

JACK BAILEY LAW CORPORATION

_____
Jack M. Bailey, Jr., Bar No. 2680
Mary Lou Salley Bylsma, Bar No. 26496
Jack M. Bailey, III, Bar No. 37023
2790 Fairfield Avenue
Shreveport, LA 71104
(318) 222-5200 Telephone
(318) 222-5289 Facsimile

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on:

Alexander J. Mijalis
Lunn, Irion, Salley, Carlisle & Gardner
P.O. Box 1534
Shreveport, LA 71165-1534

by placing a copy of same in the United States Mail, properly addressed, and with adequate

postage affixed thereon, on this 6th day of March, 2018.

_____
Of Counsel